USDC SCAN INDEX SHEET

















SLD   6/22/99   13:11

3:99-CV-01095   METABOLIFE V. WORNICK

*10*

*P/A.*

ORIGINAL

1   Gregory D. Roper, State Bar No. 087019
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
2   600 West Broadway, Suite 2600
    San Diego, California 92101-3391
3   Telephone No.: (619) 236-1414
    Fax No.: (619) 232-8311
4
    Jeffrey R. Martin, BBO #322520
5   Robert J. O'Regan, BBO #039970
    BURNS & LEVINSON LLP
6   125 Summer Street
    Boston, Massachusetts 02110
7   Telephone No. 617-345-3000
    Fax No.: 617-345-3299
8

9   Attorneys for Defendant GEORGE BLACKBURN

10

11               UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13  METABOLIFE INTERNATIONAL, INC., a    )  Case No.: 99CV1095R (LAB)
    California corporation,,              )
14                                        )
                                          )  **MEMORANDUM OF POINTS AND**
15          Plaintiff,                    )  **AUTHORITIES IN SUPPORT OF**
                                          )  **DEFENDANT GEORGE BLACKBURN'S**
16      v.                               )  **MOTION TO DISMISS OR, IN THE**
                                          )  **ALTERNATIVE, TO TRANSFER VENUE**
17  SUSAN WORNICK, an individual, GEORGE )  **AND FOR ATTORNEY'S FEES AND**
    BLACKBURN, an individual, and HEARST- )  **COSTS**
18  ARGYLE TELEVISION, INC., a Delaware   )
    corportion, d/b/a WCVB-TV.,           )  DATE:    September 7, 1999
19                                        )  TIME:    2:00 P.M.
            Defendants.                   )
20  _____ )  The Honorable John S. Rhoades

21

22

23

24

25

26

27

28

10

99CV1095R (LAB)

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    The News Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    The Public Debate About Ephedrine . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.    Metabolife's Motives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      E.    Jurisdictional Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    This Court Lacks Personal Jurisdiction Over Dr. Blackburn . . . . . . . . . . 6

            1.    There Is No General Jurisdiction Over Dr. Blackburn. . . . . . . . . . . 6

            2.    The Court Lacks Specific Jurisdiction Over Dr. Blackburn. . . . . . . . 7

                  (i)    Dr. Blackburn's contacts with the forum are not sufficient to
                         establish jurisdiction.                                    . . . . . 7

                  (ii)   Exercising personal jurisdiction over Dr. Blackburn would not be
                         reasonable.                                                . . . . . 9

      B.    Venue In the Southern District of California Is Improper . . . . . . . . . . . . . . 11

      C.    If Dismissal Is Denied, A Transfer Of Venue To Massachusetts
            Is Proper                                                      . . . . . . . . . . 12

            1.    Venue And Personal Jurisdiction Are Proper In The District of
                  Massachusetts.                                          . . . . 12

            2.    A Transfer Would Serve The Convenience Of The
                  Parties And Witnesses.                                  . . . . 12

            3.    A Transfer To Massachusetts Is In The Interests of Justice. . . . . . . . . . . 13

      D.    The Action Should Be Dismissed Under The Anti-SLAPP Statute . . . . . . . . . . 14

            1.    Speedy Resolution Is Favored Under the First Amendment
                  And The Anti-SLAPP Statute.                             . . . . 14

            2.    Metabolife Cannot Prove Substantial Falsity. . . . . . . . . . . . . . . . . . . . 17

            3.    Metabolife Cannot Prove Constitutional "Actual Malice" . . . . . . . . . . . 18

1

1

# TABLE OF CONTENTS

2

Page No.

3

4.      The Alleged Statements Are Absolutely Protected Opinion ........... 20

4

5

5.      No Cause Of Action Can Be Stated Under Any Theory of
Recovery Since The Statements At Issue Are Protected. ............. 21

6

E.    Dr. Blackburn Is Entitled To An Award Of Attorney's Fees and
Costs. ............................................................ 22

7

IV.    CONCLUSION ............................................ 23

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

99CV1095R (LAB)

TABLE OF AUTHORITIES

Cases                                                                                       Page No.

Accord Gordy v. Daily News, L.P.,
    95 F.3d 829, 831-32 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Amoco Egypt Oil Co. v. Leonis Navigation Co.,
    1 F.3d 848, 851 n.3 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Blatty v. New York Times Co.,
    42 Cal.3d 1033, 1042-43, 1048 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Bolton v. Tesoro Petroleum Corp.,
    549 F.Supp. 1312, 1314 (E.D.Pa. 982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Braun v. Chronicle Publishing Co.,
    52 Cal.App.4th 1036 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Burger King Corp. v. Rudzewicz,
    471 U.S. 462, 472-73 n.15 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Calder v. Jones,
    465 U.S. 783 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

Carr v. Warden,
    159 Cal.App.3d 1166, 1170 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Casualty Assurance Risk Insurance Brokerage Co. v. Dillon,
    976 F.2d 596 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

Church of Scientology of California v. Wollersheim,
    42 Cal.App.4th 628 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17

Core-Vent Corp. v. Nobel Industries AB,
    11 F.3d 1482 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Core-Vent Corp. v. Nobel Industries AB,
    11 F.3d 1482, 1484 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 11

Data Disc, Inc. v. Systems Technology Assoc., Inc.
    557 F.2d 1280, 1286 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Decker Coal Co. v. Commonwealth Edison Co.,
    805 F.2d 834, 843 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Decker Oil Co. v. Commonwealth Edison Co.,
    805 F.2d 834, 843 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Dixon v. Superior Court (Scientific Resource Surveys, Inc.,
    30 Cal.App.4th 733 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Dixon v. Superior Court,
    30 Cal.App.4th 733, 742, 743 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

99CV1095R (LAB)

Flotech, Inc. v. E.I. DuPont de Menours Co.,
    627 F.Supp. 358, 365-66 (D. Mass. 1985), aff'd, 814 F.2d 775, 780-81 (1st Cir. 1987).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fodor v. Berglas,
    23 Med. L. Rep. 1498, 1994 WL 922477 (C.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . 13

Gaines, Emhof, Metzler & Kriner v. Nisberg,
    843 F.Supp. 851, 854 (W.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gantry Construction Co. v. American Pipe and Construction Co.,
    49 Cal.App.3d 186, 194 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gertz v. Robert Welch, Inc.,
    418 U.S. 323, 329-30 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Good Government Group of Seal Beach, Inc. v. Superior Court,
    22 Cal.3d 672, 685 (1979), cert. denied, 441 U.S. 961 (1980) . . . . . . . . . . . . . . . . . 15

Gordy v. Daily News LP,
    95 F.3d 829, 833 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501, 509 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Helicopteros Nacionales de Columbia v. Hall,
    466 U.S. 408, 414-15 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

International Shoe Co. v. Washington,
    326 U.S. 310, 320 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Kaufman v. Fidelity Federal Savings & Loan Association,
    140 Cal.App.3d 913 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees Local 483,
    69 Cal.App.4th 1057 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

McDonough v. Fallon McElligot, Inc.,
    1996 WL 753991 (S.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Melaleuca, Inc. v. Clark,
    66 Cal.App. 4th 1344, 1363 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

Milkovich v. Lorain Journal Co.,
    497 U.S. 1, 17 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Miller v. Nestande,
    192 Cal.App.3d at 196 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

_Milliken v. Meyer_
    311 U.S. 457, 463 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

_National Foundation for Cancer Research v. Council of Better Bureaus,_
    705 F.2d 98, 101-02 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

_New York Times v. Sullivan,_
    376 U.S. 254, 280 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

_Nizam-Aldine v. City of Oakland,_
    47 Cal.App.4th 365, 365 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

_Potter v. Firestone Tire & Rubber Co.,_
    6 Cal.4th 965, 991 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

_Reader's Digest Association,_ 37 Cal.3d at 265 . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

_Shute v. Carnival Cruise Lines,_
    897 F.2d 377, 379 (9th Cir. 1990), _rev'd on other grounds,_ 499 U.S. 585 (1991) . . . . . . . 6

_Sipple v. Chronicle Publishing Co.,_
    154 Cal.App.3d 1040, 1046-47 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

_Southwell v. Mallery, Stern and Warford,_
    494 Cal.App.3d 140, 142 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

_Steaks Unlimited, Inc. v. Deaner,_
    623 F.2d 264, 274 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

_Stolz v. KSFM 102 FM,_
    30 Cal.App.4th 195, 203-04 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

_Tannehill v. Finch,_
    188 Cal.App.3d 224, 228 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

_Unelko Corp. v. Rooney_
    912 F.2d 1049, 1056 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

_United States v. Lockheed Missiles and Space Co.,_
    171 F.3d 1208, 1218 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

_Van Dusen v. Barrack,_
    376 U.S. 612, 616 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

_Weingarten v. Block,_
    102 Cal.App.3d 129, 134-35 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

_Westmoreland v. CBS,_
    8 Med. L. Rep. 2493, 2496 (D.S.C. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilcox v. Superior Court,*
    27 Cal.App.4th 809, 820 (1994); CCP §425.16(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Woodke v. Dahm,*
    70 F.3d 993, 985 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Young Properties Corp. v. United Equity Corp.,*
    394 F.Supp. 1243, 1246 (S.D. Cal. 1975); appeal dismissed, 534 F.2d 847 (9th Cir. 1976),
cert. denied, 429 U.S. 830 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12


Statutes

28 U.S.C. §1391(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. §1391(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. §1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

Cal. Code Civ. Proc. § 410.10, California Long-Arm Statute . . . . . . . . . . . . . . . . . . . . . 7

California Code of Civil Procedure Section 425.16 . . . . . . . . . . . . . . . . . . . . 1, 14, 15

CCP §425.16(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Cal. Code of Civ. P. §425.16(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CCP § 425.16 (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


Other Authorities

Massachusetts General Laws c. 231 §59H . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

497 U.S. at 17-18. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Dietary Supplement and Health Education Act of 1994,
    Pub. L. No. 103-417, 108 Stat. 4325 (Oct. 25, 1994) . . . . . . . . . . . . . . . . . . . . . . 4

Massachusetts General Laws c. 231, §59H,Anti-SLAPP Statute, . . . . . . . . . . . . . . . 14, 15

Restatement (Second) of Torts, §566 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

San Diego Union Tribune, May 30, 1999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Sudden Death of a Health College Student Related to Ephedrine toxicity from a Mahuang
Containing Drink,
    17 Journal of Clinical Psychopharmacology, 437-38 (1977) . . . . . . . . . . . . . . . . . 5

Washington Post, May 24, 1999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

1        Defendant George L. Blackburn, M.D., Ph.D., submits this consolidated memorandum in

2 support of his Motion to Dismiss or, in the Alternative, to Transfer Venue and for Attorney's Fees and

3 Costs.    Dr. Blackburn moves to dismiss on the following three grounds: (1) lack of personal

4 jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2),  (2) improper venue, pursuant to Fed.R.Civ.P.

5 12(b)(3), and (3) pursuant to California Code of Civil Procedure Section 425.16 because the plaintiff

6 cannot establish a probability of succeeding on the merits of its claim. If dismissal on all of the above

7 grounds is denied, a change of venue for the convenience of the parties and in the interests of justice

8 is warranted pursuant to 28 U.S.C. §1404(a). Dr. Blackburn also seeks recovery of his attorney's fees

9 and costs incurred in defending this lawsuit. In support of this motion, Dr. Blackburn relies upon his

10 own declaration ("Blackburn Dec."), the declaration of his counsel ("O'Regan Dec.") and various

11 attachments thereto.

12 I.

13 **INTRODUCTION**

14        This case arises out of a series of public interest news reports prepared by a local television

15 station in Boston, Massachusetts. The reports discussed the widespread use of ephedrine-based diet

16 pills manufactured and sold nationwide by plaintiff Metabolife International, Inc. Among other

17 things, the report informed viewers about the criminal background of Metabolife's president, Michael

18 Ellis, and the alarming reports of health risks, including death, associated with the use of ephedrine-

19 based dietary supplements. Dr. George L. Blackburn was one of the physicians whose remarks about

20 health risks were aired in the series.

21        The report also informed viewers that the United States Food and Drug Administration

22 ("FDA") and various state governments are now taking steps to promote public safety by regulating

23 the sale of products such as those sold by Metabolife. Dr. Blackburn, an individual who Metabolife

24 concedes is a "leading authority" in obesity research (Complaint, ¶16), is one of many experts who

25 have been consulted by the FDA and state governments to discuss the medical risks of using

26 ephedrine-based products. Among other appointments, Dr. Blackburn serves on the FDA's Food

27

28

1

1  Advisory Committee Working Group on Dietary Supplements Containing Ephedrine [1] and is
2  scheduled to testify shortly before the Massachusetts legislature about this significant public health
3  issue. (Blackburn Dec., ¶¶ 6, 7).

4       Because Dr. Blackburn has dared to speak-out in a Boston news interview about the risks of
5  using products such as Metabolife 356, Metabolife has sued him. News reports around the United
6  States have noted that Metabolife has previously embarked on an aggressive political strategy to
7  acquire patronage and to kill legislative or regulatory initiatives that would curtail its highly profitable
8  business. (Washington Post, May 24, 1999, and San Diego Union Tribune, May 30, 1999, attached
9  to O'Regan Dec. as Exs. 22, 26). Metabolife now has expanded its strategy to include litigation in
10 an obvious attempt to chill the public debate over the safety of its product. (O'Regan Dec. at ¶¶ 16,
11 17, Exhibits 28, 29).

## II.

## STATEMENT OF FACTS

### A.    The Parties

15      This suit was filed by Metabolife International, Inc. ("Metabolife"), maker of "the best selling
16 dietary supplement for weight loss in the United States." (Complaint, ¶8). Metabolife sells its
17 product, Metabolife 356, using over 50,000 independent retail distributors and more than 1,200 retail
18 locations. (Id., ¶9). Metabolife expects to sell more than two billion tablets of Metabolife 356 this
19 year. (Id.).

20      Metabolife has sued three defendants. This motion to dismiss is filed by Dr. George L.
21 Blackburn, a physician and researcher affiliated with the Beth Israel Deaconess Medical Center and
22 employed by the Harvard Medical School in Boston, Massachusetts (Blackburn Dec. ¶ 4). Dr.
23 Blackburn is a world-renowned expert on nutrition and diet, as evidenced by the extensive curriculum
24 vitae appended to his Declaration.

25 / / /

26

27 [1]    The FDA convened the Working Group in 1995 because of "[t]he growing number and consistency of
reports of serious adverse events. ... and the virtual absence of publicly available safety data on these supplements...."
28 62 Fed. Reg. at 30689.

99CV1095R (LAB)

1    The remaining defendants are Susan Wornick, a resident of Massachusetts who is a consumer

2    reporter employed by WCVB-TV in Boston, Massachusetts (Complaint, ¶4), and Hearst-Argyle

3    Television, Inc. d/b/a WCVB-TV, a Delaware corporation having a principal place of business in New

4    York. (Complaint, ¶6).

5    **B.     The News Report**

6    This case arises out of a news report prepared by a Boston, Massachusetts television network

7    and its consumer reporter, defendant Susan Wornick.   The report discussed an over-the-counter

8    weight-loss dietary supplement sold by Metabolife. (Complaint, ¶27).   The report was aired in Boston

9    in three segments appearing, respectively, on May 11, 12, and 13, 1999. (Complaint, ¶27).[1]

10   The reports include a review of the criminal background of Metabolife's president (Michael

11   Ellis), the background of the company, the experience of certain users of Metabolife 356, the reported

12   health risks of this type of product, and the legislative proposals to regulate such products.   (See

13   transcript and videotape, O'Regan Dec., Exs. 24 and 25).   The report includes brief snippets of

14   defendant Wornick's interview of Dr. Blackburn.  Dr. Blackburn had no control whatsoever over the

15   tone or content of the report, nor did he control the editing of his statements by WCVB-TV or Ms.

16   Wornick. (Blackburn Dec. ¶ 11).

17   Metabolife alleges that Dr. Blackburn committed a variety of egregious torts by stating that

18   "you can die" from taking products containing ephedrine. (Complaint, ¶34). When the reporter asked

19   Dr. Blackburn if his comments included Metabolife, Dr. Blackburn accurately stated "exactly." (Id.)

20   Dr. Blackburn's comments are consistent with information collected by the United States Food and

21   Drug Administration, including reports of deaths associated with ephedrine-based dietary

22   supplements. (O'Regan Dec., Ex. 18) 62 Fed. Reg. 30678-30679, 30683 - 30691).[2]

23

24   _____

[1] For the convenience of the Court, a videotape and transcript containing all of the reports is filed as Exhibit 24 and 25
25   to the O'Regan Declaration.

26   [2]     As explained more fully in the argument concerning  California Code of Civil Procedure §425.16, Dr.
     Blackburn's statement that a person "can die" is a protected statement of opinion.  Contrary to Metabolife's
27   allegations, such a statement, qualified by the word "can," conveys a mere possibility, not a certainty of death.
     Because Dr. Blackburn never stated that the product kills in all circumstances, and because his scientific opinions are
28   absolutely protected by the First Amendment, Metabolife cannot establish the probability of success needed to survive

1   The plaintiff alleges that the WCVB-TV report was aired in Massachusetts and in neighboring

2   New England states. (Complaint, ¶21). There is no allegation that the report aired in California,

3   although plaintiff alleges that a transcript of the report appeared on WCVB-TV's Internet web site.

4   (Complaint, ¶29). There is no allegation that any resident of California viewed the report on WCVB-

5   TV's web site.

6   ## C.       The Public Debate About Ephedrine

7       Dr. Blackburn's opinions regarding the health risks associated with ephedrine-based products

8   are properly viewed in the context of a growing national debate. In 1994, Congress passed the Dietary

9   Supplement and Health Education Act of 1994, Pub. L. No. 103-417, 108 Stat. 4325 (Oct. 25, 1994),

10  which exempted certain products considered "foods" from the dosage, labeling, distribution and other

11  regulatory requirements governing drugs. Since certain chemicals (such as ephedrine) can be found

12  in naturally growing products (such as ma Huang), companies such as Metabolife have developed

13  products considered "food" supplements, and have thrived in the absence of regulatory controls.

14      However, because of the frightening reports of health risks, including deaths, caused by dietary

15  supplements containing ephedrine, the United States Food and Drug Administration has recently

16  proposed regulations that would severely restrict the amount of ephedrine that could be included in

17  dietary supplements. 62 Fed. Reg. 30677 (June 4, 1997). Those proposed regulations (O'Regan Dec.,

18  Ex. 8) are premised on the following concerns:

19      FDA is proposing these actions in response to serious illnesses and injuries, including
        multiple deaths, associated with the use of dietary supplement products that contain
20      ephedrine alkaloids and the agency's investigations and analyses of these illnesses and
        injuries. 62 Fed. Reg. at 30678.

21

22  The FDA reported receiving more than 800 examples of illnesses and injuries associated with dietary

23  supplement products that contained, or appeared to contain, ephedrine alkaloids. The adverse events

24  reported to the FDA were described as follows:

25      These signs and symptoms included rapid and irregular heart rhythms, increased blood
        pressure, chest pain, anxiety, nervousness, tremor, hyperactivity and insomnia (i.e., inability
26      or difficulty in sleeping) and were associated with clinically significant conditions, including

27  _____

    a motion under CCP §425.16.
28

4                                                   99CV1095R (LAB)

heart attack, stroke, psychoses, seizure and, in a few cases, death. Many of these signs and symptoms occurred in young adults who generally would not have been expected to be at high risk for such conditions (i.e., heart attack and stroke). 62 Fed. Reg. at 30679.

In addition to the FDA's proposed regulations, legislation has been filed in many states to ban or restrict the sale of ephedrine based dietary supplements. (O'Regan Dec., ¶ 13). Medical studies have confirmed that health risks, including deaths, are connected with the use of these supplements by certain individuals. (O'Regan, Dec., ¶¶ 8, 10 [2]). News organizations throughout the United States, including San Diego, recently have published stories discussing this significant national public health issue. (O'Regan Dec., ¶14).

### D.   **Metabolife's Motives**

Because of the regulatory push by the FDA and individual state governments, Metabolife has grown concerned that its business would be imperiled by enactment of laws or regulations affecting products containing ephedrine. In a <u>Washington Post</u> article published on May 24, 1999, Michael Ellis, Metabolife's president, was quoted as saying that the proposed regulations would "virtually eliminate" his business. (O'Regan Dec., Ex. 22).

Because of this fear, Metabolife has commenced an aggressive strategy to squelch public debate about dietary supplements containing ephedrine. Not only has Metabolife used its extensive resources to acquire political influence over proposed legislation (O'Regan Dec., Exs. 23, 24, 25 & 26), but Metabolife obviously now intends to use litigation as a business weapon. By suing Dr. Blackburn and WCVB-TV, Metabolife clearly hopes to intimidate other medical researchers and news organizations from commenting publicly about the dangers of ephedrine-based dietary supplements. This strategy is revealed by the fact that Metabolife has recently threatened another news organization by referring to this lawsuit. (O'Regan Dec., Exs. 27, 28). The message from Metabolife's threatening letter is clear - - if you run your story, we'll come after you and your sources, just like we did to Dr. Blackburn and WCVB-TV.

---

[2]      An example of one such report is Theoharides, T., <u>Sudden Death of a Health College Student Related to Ephedrine toxicity from a Mahuang Containing Drink</u>, 17 Journal of Clinical Psychopharmacology, 437-38 (1977).I (O'Regan Dec., Ex. 10). To the extent Metabolife claims that death reports collected by the FDA (and others) are unverified or that the connection to Metabolife is unproven, Metabolife's position is reminiscent of the long-standing (and now universally discredited) tobacco company mantra denying the link between cancer and tobacco.

E.    **Jurisdictional Facts**

There is no allegation that Dr. Blackburn directed his allegedly defamatory comments to a California audience. In fact, while Dr. Blackburn understood that his interview with Ms. Wornick would be broadcast in Massachusetts, he had no knowledge or expectation that the report would be aired in California. (Blackburn Dec., ¶ 11). He was not aware that all or any part of his interview would be set forth on WCVB-TV's Internet web site. ( Id.)

Dr. Blackburn has never been a resident of California; he has never owned real estate in California; he has never been employed by any entity having a principal place of business in California; and none of his interview with defendant Wornick occurred in California. (Blackburn Dec., ¶¶ 3, 8).

### III.

### ARGUMENT

A.    **This Court Lacks Personal Jurisdiction Over Dr. Blackburn.**

The plaintiff has the burden of establishing personal jurisdiction. Shute v. Carnival Cruise Lines, 897 F.2d 377, 379 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585 (1991). A court may exercise personal jurisdiction over a defendant under either of two theories. A court may rely on general jurisdiction if a defendant has "continuous and systematic" contacts with the forum state that are unrelated to the litigation. Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414-15 (1984). Specific jurisdiction is appropriate when a defendant has contacts with a forum state and the litigation arises out of those contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 n.15 (1984).

1.    **There Is No General Jurisdiction Over Dr. Blackburn.**

Here, plaintiff makes no allegations that would satisfy the requirements for general jurisdiction. Dr. Blackburn has never resided in California or owned any property there. (Blackburn Dec., ¶ 3). He has never been employed in California. (Id.) There are, in short, no facts that would support an assertion of general jurisdiction over Dr. Blackburn in California. See, e.g., Amoco Egypt Oil Co. v.

/ / /

1  Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993) (noting that general jurisdiction is rarely

2  found even with extensive contacts in forum).

3       2.     **The Court Lacks Specific Jurisdiction Over Dr. Blackburn.**

4       The California Long-Arm Statute, Cal. Code Civ. Proc. § 410.10, allows personal jurisdiction

5  to be asserted over a defendant to the same extent as the Due Process Clause. Core-Vent Corp. v.

6  Nobel Industries AB, 11 F.3d 1482, 1484 (9th Cir. 1993); Data Disc, Inc. v. Systems Technology

7  Assoc., Inc. 557 F.2d 1280, 1286 (9th Cir. 1977). The fundamental due process inquiry is whether an

8  assertion of jurisdiction "offend[s] 'traditional notions of fair play and substantial justice'."

9  International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945), quoting Milliken v. Meyer 311 U.S.

10  457, 463 (1940).

11     Three requirements must be satisfied in order to exercise specific jurisdiction over a non-

12  resident defendant:

13         (1) The non-resident defendant must do some act or consummate some transaction
           with the forum or perform some act by which he purposefully avails himself of the
14         privilege of conducting activities in the forum, thereby invoking the benefits and
           protections of its laws. (2) The claim must be one which arises out of or results from
15         the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

16  Data Disc, 557 F.2d at 1287. Accord Gordy v. Daily News, L.P., 95 F.3d 829, 831-32

17  (9th Cir. 1996). None of these requirements are satisfied as to Dr. Blackburn.

18         (i)     **Dr. Blackburn's contacts with the forum are not sufficient to**
                   **establish jurisdiction.**
19

20     Dr. Blackburn indisputably was not present in California when he spoke to WCVB-TV about

21  ephedrine-based dietary supplements. There is no allegation that he expected his comments to be aired

22  in California. The sole jurisdictional "fact" upon which plaintiff apparently relies is that Dr.

23  Blackburn's comments allegedly had an "effect" on Metabolife and, since Metabolife is headquartered

24  in California, that "effect" constitutes a sufficient contact to warrant personal jurisdiction.

25     Plaintiff's "effect" argument was spawned in Calder v. Jones, 465 U.S. 783 (1984), which held

26  that specific jurisdiction in California could be asserted over the authors and publishers of a Florida-

27  based national magazine which printed allegedly defamatory statements about a professional

28  entertainer who resided in California. Because the publication was widely circulated in California and

1  was specifically directed at an entertainer who resided in and worked in California, personal

2  jurisdiction over the defendants was proper "based on the 'effects' of their Florida conduct in

3  California." Id. at 789.

4      The Calder case has no application to Dr. Blackburn because Calder involved defendants who

5  indisputably circulated their publication in California (the publication's state of largest circulation, 465

6  U.S. at 790), and because the plaintiff was an individual who felt the brunt of the harm - - both

7  emotional distress and injury to her professional reputation - - in California. Id. at 789-90. Recent

8  decisions in this Circuit have relied upon the absence of these critical elements in declining to assert

9  personal jurisdiction in cases involving corporate plaintiffs.

10      In Casualty Assurance Risk Insurance Brokerage Co. v. Dillon, 976 F.2d 596 (9th Cir. 1992),

11  the Court of Appeals rejected a corporate plaintiff's contention that jurisdiction in the corporation's

12  home state was proper merely because the "effect" of an out-of-state defamatory statement was felt

13  in the state of incorporation.   There, the defendant, who served as the Indiana Insurance

14  Commissioner, wrote a letter concerning the plaintiff, a Guam-based insurance company. The letter

15  was not sent to Guam. The Court held that, even if the plaintiff felt the effects of the letter in the state

16  where it resided, personal jurisdiction in Guam was not appropriate because the letter had not been

17  circulated in Guam. Id. at 600-01.

18      In another case bearing similarities to the present suit, the Ninth Circuit held that personal

19  jurisdiction in California could not be asserted over a Swedish medical journal and its Swedish authors

20  who published allegedly defamatory statements about a California corporation's dental implant

21  devices.   Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482 (9th Cir. 1993).   The Court of

22  Appeals rejected plaintiff's analogy to Calder, stating that Calder was "predicated on (1) intentional

23  actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered - - and

24  which the defendant knows is likely to be suffered - - in the forum state." Id. at 1486.

25      In Core-Vent, although the defendant's medical journal was circulated worldwide (including

26  California), there was no allegation that California "was a primary audience" for the journal or that the

27  defendants knew that the journal would be circulated in California. Id. Furthermore, as recognized

28  in Dillon, supra, "a corporation does not suffer harm in a particular geographic location in the same

8

1   sense that an individual does." Id.[5]  See also Gordy v. Daily News LP, 95 F.3d 829, 833 (9th Cir.

2   1996) (discussing Core-Vent and stating that "we also expressed doubt that the defamation was truly

3   targeted at California when the purported target was a corporation that did a worldwide business.").

4         Applying these cases to Dr. Blackburn leads to the inescapable conclusion that his alleged

5   conduct does not satisfy the Calder "effects" test for establishing personal jurisdiction.  First, unlike

6   the reporters in Calder, there is no allegation that Dr. Blackburn targeted his comments at California

7   or that the comments were aired outside of New England.  Instead, it is undisputed that the statements

8   were made to a Boston television reporter for use in a local Boston news report.[6]

9         Second, Metabolife cannot possibly demonstrate that the brunt of the "effects" of Dr.

10  Blackburn's statements were primarily felt in California.  Metabolife is a corporation which conducts

11  business throughout the United States.  (Complaint, ¶8-9).  Metabolife's Complaint expressly alleges

12  that the only "harm" it has suffered is through the potential for canceled orders from customers and

13  distributors located in the viewing area where the report was aired.  (Complaint, ¶104).  There is no

14  allegation that any California customers or distributors reacted adversely to, or were even aware of,

15  Dr. Blackburn's statements.  The existence of a California office, standing alone, is not sufficient to

16  establish personal jurisdiction.  Core-Vent, 11 F.3d at 1486 ("[W]e [have] refused to accept the

17  plaintiff's argument that the effects of libel are felt and jurisdiction exists wherever a corporate

18  plaintiff resides." Citing Dillon. 976 F.2d at 600-01).

19              **(ii)    Exercising personal jurisdiction over Dr. Blackburn would not
                          be reasonable.**

20

21        Exercising specific jurisdiction over Dr. Blackburn would be unreasonable for at least four

22

23  —        The Court of Appeals in Core-Vent declined to rule on the "effects" argument, opting instead to reject
   personal jurisdiction on the grounds that the exercise of jurisdiction would be unreasonable and not consistent with

24  fair play and substantial justice given the plaintiff's status as an international corporation, as compared to the
   individual Swedish defendants who would be severely inconvenienced by being forced to litigate in California.

25

   —        The allegations concerning a WCVB-TV web site are not applicable to Dr. Blackburn. (Complaint, ¶29).

26  There is no allegation that Dr. Blackburn knew that his comments would appear on a web site, nor does plaintiff
   allege that any California residents viewed the web site.  In any event, in McDonough v. Fallon McElligot, Inc., 1996

27  WL 753991 (S.D. Cal. 1996), this Court noted that "allowing computer interaction via the web to supply sufficient
   contacts to establish jurisdiction would eviscerate the personal jurisdiction requirement as it currently exists . . . . " Id.

28  at *2.

1   reasons.[2]   First, Dr. Blackburn clearly has not "purposefully interjected" himself into California's

2   affairs.  As previously discussed, none of Dr. Blackburn's conduct occurred in California and there

3   is no allegation that any Metabolife customer or distributor in California was aware of Dr. Blackburn's

4   statements.  Even if this Court were to assume that the "effects" of Dr. Blackburn's statements

5   constituted a "contact" with California, the contact must be substantial in order to make an exercise

6   of specific jurisdiction reasonable.  Core-Vent, 11 F.3d at 1488 (even if there are sufficient minimum

7   contacts to satisfy the purposeful availment prong, "the degree of interjection" into the forum state

8   must be weighed in assessing the reasonableness of jurisdiction).  Because Dr. Blackburn has not

9   personally directed any actions at California, and because any "effects" of his statements in California

10   are questionable at best, this factor weighs heavily in favor of denying jurisdiction.

11        A second factor favoring dismissal is the burden on Dr. Blackburn of litigating this action

12   3,000 miles from his home.  The expense and inconvenience of forcing an individual resident of

13   Boston, Massachusetts to conduct this litigation against a national corporation in San Diego, California

14   is obvious.  (Blackburn Dec., ¶ 5).  It is unreasonable to expect Dr. Blackburn to defend this action

15   from so great a distance.  Core-Vent, 11 F.3d at 1490 (it is unreasonable to require individual Swedish

16   defendants to litigate in California against an international corporation); Dillon, 976 F.2d at 600 (the

17   burden on a Indiana individual of litigating in Guam in unreasonable).

18        A third factor weighing in favor of dismissal is that it will be inefficient to litigate this action

19   in California.  All of the disputed events took place in Massachusetts and, as a result, virtually all of

20   the evidence and witnesses are located there.  Even plaintiff will, presumably, need to use

21   / / /

22   Massachusetts customers and distributors as witnesses to prove that it has been harmed by Dr.

23

_____

24   –     The Ninth Circuit has recognized seven factors that are relevant to a determination as to whether or not
     exercising specific jurisdiction over a defendant is reasonable.  Gordy, 95 F.3d at 835-36 (providing history of seven
25   factor test and emphasizing that factors other than the seven enumerated in recent Ninth Circuit decisions should be
     considered when appropriate).  None of these factors are dispositive and all of the factors should be balanced. Core-
26   Vent, 11 F.3d at 1488.  The factors are "(1) the extent of the defendant's purposeful interjection into the forum state's
     affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of
27   the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution
     of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7)
28   the existence of an alternative forum."  Core-Vent, 11 F.3d at 1487-488.

1    Blackburn's statements. (Complaint ¶ 104).

2         The final factor supporting dismissal is that there is an alternative forum where the litigation

3    could be brought.  Conducting this litigation in Massachusetts would allow all of the parties and

4    virtually all material witnesses to be present at trial.  Massachusetts is the most efficient place to

5    conduct this trial. Core-Vent. 11 F.3d at 1490.

6         In short, the plaintiff cannot meet its burden of showing that Dr. Blackburn had sufficient

7    contacts with California to make an assertion of personal jurisdiction reasonable.  The Complaint

8    therefore should be dismissed.

9    **B.    <u>Venue In the Southern District of California Is Improper</u>**

10        Plaintiff fails to allege why venue is proper in this Court.   Plaintiff alleges only that

11   "Defendants have sufficient contacts in the Southern District and a substantial part of the events and

12   omissions giving rise to this claim occurred in the Southern District." (Complaint, ¶7). This allegation

13   purports to track the language of 28 U.S.C. §1391(a).

14        Regardless of whether these allegations have merit as to other defendants, it is inconceivable

15   that plaintiff could allege in good faith that Dr. Blackburn has "sufficient contacts in the Southern

16   District." No such "contacts" are alleged, nor could they honestly be alleged. (Blackburn Dec., ¶ 3).

17        Furthermore, the conclusory allegation that a substantial part of the events giving rise to the

18   claim occurred in the Southern District is patently false.  This factor focuses solely on the activities

19   of the defendant, not the plaintiff.  <u>See</u> <u>Woodke v. Dahm</u>, 70 F.3d 993, 985 (8th Cir. 1995); <u>Gaines,</u>

20   <u>Emhof, Metzler & Kriner v. Nisberg</u>, 843 F.Supp. 851, 854 (W.D.N.Y. 1994).  Thus, any argument

21   by Metabolife that it suffered reputation injury in its state of incorporation is irrelevant to the venue

22   analysis. <u>See</u>, <u>e.g.</u>, <u>Woodke</u>. 70 F.3d at 985 (in Lanham Act case involving passing-off of products

23   in another district, venue does not lie in district of plaintiff's residence merely because that is where

24   plaintiff ultimately feels the effect of defendant's conduct).

25        Here, it is undisputed that Dr. Blackburn was interviewed in Massachusetts, that the news story

26   aired in Massachusetts (and, allegedly, in surrounding New England states) and that any impact of the

27   story was felt by Metabolife as a result of New England customers and distributors allegedly reacting

28   to the story.  (Complaint, ¶104).  Those facts are sufficient to establish venue in Massachusetts, not

1  California.

2  **C.    If Dismissal Is Denied, A Transfer Of Venue To Massachusetts
        Is Proper**

3

4  Congress has provided for transfer of this suit to its appropriate forum:

5          For the convenience of the parties and witnesses, in the interests of
        justice, a district court may transfer any civil action to any other district
6        or division where it might have been brought.

7  28 U.S.C. §1404(a).    This statute was enacted in 1948 because of "an increased desire to have federal

8  civil suits tried in the federal system at the place called for in the particular case by considerations of

9  convenience and justice."  Van Dusen v. Barrack. 376 U.S. 612, 616 (1964).

10  On its face, the statute sets forth three factors that a court should consider in deciding whether

11  transfer is proper: (1) is the proposed transferee forum one where the suit "might have been brought"

12  initially; (2) will transfer further the convenience of the parties and witnesses; and (3) will a transfer

13  further the interests of justice.  These three factors are satisfied here.

14          **1.    Venue And Personal Jurisdiction Are Proper In The District of
                Massachusetts.**

15

16  Venue and personal jurisdiction are clearly proper in the District of Massachusetts.  Dr.

17  Blackburn resides in Massachusetts and, because all of Dr. Blackburn's alleged activities occurred in

18  Massachusetts, that is a judicial district in which a "substantial part of the events or omissions giving

19  rise to the claim" occurred.  See 28 U.S.C. §1391(a)(1).

20          **2.    A Transfer Would Serve The Convenience Of The
                Parties And Witnesses.**

21

22  The convenience of parties and witnesses is affected by several factors.  These include (1) the

23  residence of the parties; (2) the location of witnesses; (3) the subpoena power of the forum court; (4)

24  the cost and ease of access to documents and other sources of proof; and (5) "all other particular

25  problems that make trial of a case easy, expeditious and inexpensive."  Decker Coal Co. v.

26  Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Young Properties Corp. v. United

27  / / /

28  Equity Corp., 394 F.Supp. 1243, 1246 (S.D. Cal. 1975), appeal dismissed, 534 F.2d 847 (9th Cir.

99CV1095R (LAB)

1   1976), cert. denied, 429 U.S. 830 (1976).

2        Here, there can be no question that a Massachusetts forum is far more convenient for the parties

3   and witnesses than California. Every operative fact of significance concerning Dr. Blackburn occurred

4   in Massachusetts. The news report was filmed in Massachusetts, aired in Massachusetts and its

5   impact, if any, has been felt through allegedly declining sales suffered by distributors in the Boston

6   metropolitan viewing area. (Complaint, ¶104). Even Metabolife's factual evidence of "harm" will

7   require customer or distributor witnesses from Massachusetts or surrounding New England states.[8]

8        **3.      A Transfer To Massachusetts Is In The Interests of Justice.**

9        The "interests of justice" require a court to consider public interest factors in deciding whether

10  to transfer a suit. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947); Decker Oil Co. v.

11  Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). These factors include (1) the interest

12  in having controversies decided in the forum having the greatest local interest in the case; (2) the

13  burden on judicial resources of having related actions pending in separate forums; and (3) the relative

14  congestion of dockets of the transferor and transferee courts. Id. See also Bolton v. Tesoro Petroleum

15  Corp., 549 F.Supp. 1312, 1314 (E.D.Pa. 982).

16       Massachusetts has a far greater interest in this case than does California. Not only do all

17  operative facts and all primary witnesses reside in or near Massachusetts, but Massachusetts has a

18  compelling interest in protecting the First Amendment rights of its citizens (Dr. Blackburn and

19  defendant Wornick) and local public news organizations (WCVB-TV). These rights are of particular

20  local interest because the broadcast at issue made reference to pending legislation which would

21  regulate the sale in Massachusetts of diet supplements such as Metabolife. (O'Regan Dec., Ex. 24,

22  25). Dr. Blackburn is scheduled to testify before the Massachusetts legislature on June 29, 1999, in

23  hearings on the proposed legislation. (Blackburn Dec., ¶ 7). The timing of Metabolife's lawsuit in

24  light of Dr. Blackburn's planned testimony raises serious questions about Metabolife's motivations.

25

26  [8]   Metabolife's choice of a California forum cannot override the compelling arguments for transferring this case to Massachusetts. In First Amendment cases, there is a substantial chilling effect on First Amendment rights if defendants can be subjected to trials far from their homes and occupations. See Westmoreland v. CBS, 8 Med. L.

27  Rep. 2493, 2496 (D.S.C. 1982)(transferring South Carolina resident's defamation suit to New York pursuant to §1404(a)). For that reason alone, plaintiff's choice of a home forum should be disregarded. See Fodor v. Berglas, 23

28  Med. L. Rep. 1498, 1994 WL 922477 (C.D. Cal. 1994)

1   Massachusetts clearly has a compelling interest in assuring that large national corporations like

2   Metabolife do not unfairly chill its citizens from participating in this significant public debate.

3   **D.      The Action Should Be Dismissed Under The Anti-SLAPP Statute**

4          In addition to Dr. Blackburn's Rule 12 defenses and right to venue in Massachusetts, the action

5   should be dismissed under California Code of Civil Procedure Section 425.16 and/or Massachusetts

6   General Laws c. 231 §59H.[9]   Dismissal under these statutes is sought as an alternative to and without

7   waiver of Dr. Blackburn's Rule 12 defenses. Dr. Blackburn joins his motion under these statutes with

8   his Rule 12 motions because a motion under CCP § 425.16 should be filed within sixty days of service

9   of the complaint. CCP § 425.16 (f).

10         The California statute provides, in pertinent part, as follows:

11         A cause of action against a person arising from any act of that person in furtherance of
           the person's right of petition or free speech under the United States or California
12         Constitution in connection with a public issue shall be subject to a special motion to
           strike, unless the court determines that the plaintiff has established that there is a
13         probability that the plaintiff will prevail on the claim.

14   Cal. Code of Civ. P. §425.16(b)(1).  Using this statute, California courts have dismissed numerous

15   defamation lawsuits, thereby furthering the directive of the legislature that "this section shall be

16   construed broadly."  CCP §425.16(a).  Monterey Plaza Hotel v. Hotel Employees & Restaurant

17   Employees Local 483, 69 Cal.App.4th 1057 (1999); Braun v. Chronicle Publishing Co., 52

18   Cal.App.4th 1036 (1997); Church of Scientology of California v. Wollersheim, 42 Cal.App.4th 628

19   (1996); Dixon v. Superior Court (Scientific Resource Surveys, Inc., 30 Cal.App.4th 733 (1994).

20                 **1.      Speedy Resolution Is Favored Under the First Amendment**
21                 **And The Anti-SLAPP Statute.**

22         California and federal courts have long recognized that speedy resolution of First Amendment

23   cases is favored.  For years, the primary device for such speedy resolution was summary judgment.

24   With the enactment in 1992 of California Code of Civil Procedure §425.16, the anti-SLAPP (Strategic

25   _____

26   [9]     This Court need not resolve whether California or Massachusetts law governs this case in order to grant this
     motion to dismiss.  Massachusetts also has an anti-SLAPP statute.  Massachusetts General Laws c. 231, §59H.
     Dismissal would be required in either state under the First Amendment.  Massachusetts also requires "actual malice"
27   proof in this product disparagement case.  Flotech, Inc. v. E.I. DuPont de Menours Co., 627 F.Supp. 358, 365-66 (D.
     Mass. 1985), aff'd, 814 F.2d 775, 780-81 (1st Cir. 1987).

28

1   Lawsuit Against Public Participation) statute, a more expedited procedure for speedy resolution of

2   First Amendment cases was created. In <u>United States v. Lockheed Missiles and Space Co.</u>, 171 F.3d

3   1208, 1218 (9th Cir. 1999), the Ninth Circuit determined that the California anti-SLAPP statute

4   governs federal diversity cases.

5       First Amendment cases have been given special treatment in the federal and California courts

6   for years because of the fear that the threat of protracted litigation alone is enough to inhibit the

7   exercise of First Amendment rights as potential speakers will self-censor rather than risk being sued.

8   As stated in <u>Kaufman v. Fidelity Federal Savings & Loan Association</u>, 140 Cal.App.3d 913 (1983):

9           [S]ummary judgment is a favored remedy to resolve cases concerning First
            Amendment rights. The chilling effect of protracted litigation on the exercise of free
10          speech requires speedy resolution.

11          . . . .

12          If the First Amendment stands for anything at all, it guarantees that debates on political
            issues of the day will remain uninhibited, robust and wide open. This constitutional
13          safeguard was fashioned to assure unfettered interchange of ideas for the bringing
            about of political and social changes. Consequently, speech which arises directly from
14          political debates - i.e., that which is at the heart of the First Amendment - is entitled to
            greater protection. In fact, First Amendment protection extends even to some nontruths
15          in order to protect speech that matters. [Citations omitted].

16   <u>Id</u>. at 919.

17      The United States Supreme Court has stated that "[t]he chilling effect upon the exercise of First

18   Amendment rights may derive from <u>the fact of the prosecution</u> unaffected by the prospects of its

19   success or failure." <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 487 (1965) (emphasis added). <u>See also</u> <u>New</u>

20   <u>York Times v. Sullivan</u>, 376 U.S. 254, 280 (1964) ("debate of political issues [is] at the very heart of

21   the type of speech the First Amendment was designed to protect."); <u>Good Government Group of Seal</u>

22   <u>Beach, Inc. v. Superior Court</u>, 22 Cal.3d 672, 685 (1979), <u>cert</u>. <u>denied</u>, 441 U.S. 961 (1980)

23   ("unnecessarily protracted litigation would have a chilling effect upon the exercise of First

24   Amendment rights, speedy resolution of cases involving free speech is desirable."). <u>Sipple v.</u>

25   <u>Chronicle Publishing Co.</u>, 154 Cal.App.3d 1040, 1046-47 (1984) ("speedy resolution of cases

26   involving free speech is desirable . . . . courts impose more stringent burdens on one who opposes the

27   motion and require a showing of high probability that plaintiff will ultimately prevail in this case.")

28      In enacting Section § 425.16, the legislature acknowledged these concerns:

99CV1095R (LAB)

The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation shall not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

CCP §425.16(a).

Dr. Blackburn's only burden on this special motion to strike is to make a *prima facie* showing that the lawsuit arises from the exercise of his right of free speech in connection with a public issue. Wilcox v. Superior Court, 27 Cal.App.4th 809, 820 (1994); CCP §425.16(b). The burden then shifts to Metabolife to demonstrate a probability that it will prevail on its claim. If Metabolife does not meet this burden, the Complaint must be stricken with prejudice. Wilcox, 27 Cal.App.4th at 830-31; CCP §425.16(b).

This case presents a classic illustration of the sort of litigation which concerned the legislature in enacting the anti-SLAPP legislation. There can be no question that Dr. Blackburn's comments relate to a subject of public interest. Even Metabolife recognizes that Dr. Blackburn is a leading authority in obesity research. (Complaint, ¶16). In addition, Dr. Blackburn is a witness in government proceedings in Massachusetts, where this telecast took place, with regard to the very issue raised in the Complaint, i.e., the safety of products, such as Metabolife's, which contain ephedrine. This is an issue that has concerned not only the state government in Massachusetts, but also the federal government. (O'Regan Dec., Ex. ¶¶8-13). Metabolife alleges that it expects to sell approximately two billion tablets of its product in the United States in 1999 alone. (Complaint, ¶8). As a matter of law, comments related to the safety of such a product relate to a matter of public concern. Melaleuca, Inc. v. Clark, 66 Cal.App. 4th 1344, 1363 (1998).

Metabolife filed its Complaint shortly before Dr. Blackburn was scheduled to testify in Massachusetts governmental proceedings regarding the potential regulation of products which, like Metabolife, contain ephedrine. (Blackburn Dec., ¶7). The fact that Dr. Blackburn is a witness in governmental proceedings should weigh heavily with this Court in considering this motion, as should Metabolife's history of attempts of suppress criticism of its products and their safety. See, e.g., Braun v. Chronicle Publishing Co., 52 Cal.App.4th 1034, 1043, (1997); Church of Scientology of California

16

1  v. Wollersheim, 42 Cal.App.4th 628, 648 (1996) ("an examination of the history of the underlying

2  litigation revealed that the instant action was consistent with a pattern of conduct by the Church to

3  employ every means, regardless of merit, to frustrate or undermine Wollersheim's petition activity").

4        Because this case raises precisely the issues that concerned the California Legislature in the

5  enactment of Section 425.16, Dr. Blackburn has established that the anti-SLAPP statute applies. The

6  Court should review the merits of the case and, once it determines that there is an insufficient

7  probability that Metabolife will prevail, the action should be dismissed with prejudice and Dr.

8  Blackburn must be awarded his attorney's fees and costs.

9        **2.    Metabolife Cannot Prove Substantial Falsity.**

10        The Complaint alleges that two defamatory statements were made by Dr. Blackburn in a

11  Boston television news broadcast concerning Metabolife. Dr. Blackburn's statements as alleged by

12  Metabolife are that one "can die" from taking Metabolife (Complaint, ¶34) and that Metabolife lacks

13  "credibility." (Complaint, ¶38). As the tape of the broadcasts shows, Dr. Blackburn's comments were

14  only a small part of the broadcasted information. Ignoring issues as to whether WCVB-TV's editing

15  of Dr. Blackburn's statements accurately conveyed the gist of his comments, the statements as aired

16  do not support a claim.

17        California defamation law absolutely protects statements that are "substantially true." Gantry

18  Construction Co. v. American Pipe and Construction Co., 49 Cal.App.3d 186, 194 (1975). This means

19  that Dr. Blackburn's comments need not be literally true in every detail to be protected; it is enough

20  that the "imputation is substantially true so as to justify the 'gist' of the statement." Southwell v.

21  Mallery, Stern and Warford, 494 Cal.App.3d 140, 142 (1957). Metabolife has the burden to prove

22  that the allegedly defamatory statements concerning these matters of public concern are false. Unelko

23  Corp. v. Rooney 912 F.2d 1049, 1056 (9th Cir. 1990) (the court concluded that protection of

24  statements concerning product effectiveness insures that public debate on such issues will be

25  uninhibited and wide-open); Nizam-Aldine v. City of Oakland, 47 Cal.App.4th 365, 365 (1996); Miller

26  v. Nestande, 192 Cal.App.3d 191, 198 (1987).

27        In this case, Metabolife will not be able to meet its burden to show falsity. Dr. Blackburn's

28  alleged statement that Metabolife's product "can kill" is well-supported. The materials submitted with

1    this motion establish that multiple deaths have been reported from the use of products containing

2    ephedrine. (O'Regan Dec., Exs. 8, 10).

3       Metabolife is also unable to prove falsity with regard to Dr. Blackburn's statement of opinion

4    as to Metabolife's credibility. Credibility is simply a judgment on the part of the speaker. There is

5    no truth or falsity to credibility; instead, it is a matter of judgment and perception. Statements that are

6    not susceptible of proof as to truth or falsity are inherently protected speech because a defamation

7    action does not lie unless a statement is demonstrably false. <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S.

8    323, 329-30 (1974).

9          **3.**     **Metabolife Cannot Prove Constitutional "Actual Malice"**

10       Even if Metabolife could prove that Dr. Blackburn's statements were false, Metabolife is

11    further obligated to prove that the alleged statements were made with constitutional "actual malice."

12    The "actual malice" standard applies for two reasons. First, as held <u>Melaleuca, Inc.</u>, 66 Cal.App.4th

13    at 1365, the level of fault required of a defendant who makes statements about a product is "actual

14    malice." In that case, the court found that the California standard BAJI instruction on constitutional

15    actual malice was inadequate because it allowed the jury to find actual malice if the defendant "must

16    have had" serious doubts about the truth of the statement of issue. The court made clear that "reckless

17    disregard" in the context of actual malice requires either subjective, actual knowledge of falsity on the

18    part of the defendant or that the defendant have a subjective, actual serious doubt as to truth at the time

19    of making the statement. Thus, Metabolife must prove that Dr. Blackburn knew that what he was

20    saying was false or that he actually had a serious doubt as to truth when he made the statements.

21       Second, the "actual malice" standard applies because Metabolife is a public figure for purposes

22    of this litigation. A corporation is a public figure if it has achieved pervasive fame or notoriety, or has

23    voluntarily injected itself into a public controversy on a particular issue. <u>Gertz</u>, 418 U.S. at 351. Large

24    corporations that sell consumer products are generally deemed to be public figures. <u>See, e.g.</u>, <u>Bose</u>

25    <u>Corp. v. Consumers Union</u>, 508 F.Supp. 1249, 1271 (D. Mass. 1981), <u>rev'd on other grounds</u>, 692 F.2d

26    189 (1st Cir. 1982), <u>aff'd</u>, 466 U.S. 485 (1984) (manufacturer of loud speaker systems and other audio

27    equipment is a public figure); <u>Steaks Unlimited, Inc. v. Deaner</u>, 623 F.2d 264, 274 (3d Cir. 1980).

28    Companies that extol the benefits of products or services have been held to be "public" when criticism

18

1  is directed at those advertised benefits. <u>National Foundation for Cancer Research v. Council of Better</u>

2  <u>Bureaus</u>, 705 F.2d 98, 101-02 (4th Cir. 1983). In <u>Reader's Digest</u>, 37 Cal.3d at 256, the California

3  Supreme Court held Synanon a public figure because of its publicity and self-promotion efforts.

4        In this case, Metabolife must be considered a public figure. [10] Metabolife alleges its status as

5  the leading seller of weight loss supplements in the United States. (Complaint, ¶8). Its advertising and

6  self-promotion is extensive. It would be difficult for anyone in San Diego who owns a television or

7  radio to be unfamiliar with Metabolife. Metabolife's status as a public figure should be decided by

8  this Court as a matter of law. <u>See, e.g.</u> <u>Stolz v. KSFM 102 FM</u>, 30 Cal.App.4th 195, 203-04 (1994);

9  <u>Weingarten v. Block</u>, 102 Cal.App.3d 129, 134-35 (1980).

10        Because the "actual malice" standard applies, Metabolife must prove its case with "clear and

11  convincing evidence." <u>Reader's Digest Association</u>, 37 Cal.3d at 258. As noted in <u>Miller v. Nestande</u>,

12  192 Cal.App.3d at 196, Metabolife must affirmatively establish "the ability at trial to clearly and

13  convincingly prove the statements were published with actual malice." Evidence is "clear and

14  convincing" only when it is so clear "as to leave no substantial doubt in the mind of the trier of fact;

15  it must be sufficiently strong to command the unhesitating assent of every reasonable mind."

16  <u>Tannehill v. Finch</u>, 188 Cal.App.3d 224, 228 (1986) (citation and additional quotation marks omitted).

17        Dr. Blackburn's opinions concerning the dangers of Metabolife and other products containing

18  ephedrine are truthful. Metabolife cannot prove the statements were false, let alone prove by clear and

19  convincing evidence that Dr. Blackburn made the statements believing they were false or with an

20  actual serious and subjective doubt as to their accuracy. The anti-SLAPP motion should be granted

21  and the case dismissed.

22  / / /

23  / / /

24

25  —    Even if this Court were to determine that Metabolife is not sufficiently prominent to be deemed a public figure for all purposes, it certainly must be classified as a "limited-purpose" public figure. Such public figures have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues

26  involved." <u>Gertz</u>, 418 U.S. at 345. In this case, the controversy is the safety of products containing ephedrine. That there is an existing public controversy concerning this issue is indisputable. The issue is raised not only by

27  Metabolife's continued public assertion of the safety of its products, but also by FDA and state legislative proposals to regulate ephedrine-based dietary supplements because of the reported health risks. (O'Regan Dec., Ex. 8 and 13).

28

                                         99CV1095R (LAB)

## 4.   The Alleged Statements Are Absolutely Protected Opinion

Under federal constitutional law, an opinion is not actionable unless it can be interpreted as stating actual facts which are capable of being proved false. Gertz, 418 U.S. at 339-40. Statements of opinion "no matter how outrageous or pernicious, are protected." Carr v. Warden, 159 Cal.App.3d 1166, 1170 (1984) (emphasis in original; citations omitted). The First Amendment requires the protection of opinion:

> Under the First Amendment there is no such thing as a false idea. However, pernicious an opinion may seem, we depend for its correction not on the conscience of judges and jury but on the competition of other ideas.

Gertz, 418 U.S. at 339-40.

Whether or not a statement constitutes a statement of opinion or a statement of fact is a question of law for the court. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 17 (1990); Baker v. Los Angeles Herald Examiner, 42 Cal. 3d 254, 260 (1986). In Milkovich, the United States Supreme Court reaffirmed well-established law that statements not containing verifiably false facts, and opinions not implying undisclosed defamatory facts, are fully protected speech. 497 U.S. at 17-18. See also Restatement (Second) of Torts, §566 (1977) (opinion is actionable only if it implies undisclosed defamatory facts as its basis. In Milkovich, the Court looked to the actual language used, the content of the entire publication, the context in which the statement was made, and the speaker's use of qualifiers. Id.

The California Supreme Court applies a similar "totality of the circumstances" test. In Baker, 42 Cal.3d at 261, the court held that a statement must be viewed as a whole to understand its import and the effect it is calculated to have on the recipient. The court noted that statements of fact published in a public debate "may well assume the character of statements of opinion." Id. at 260. The court also stated, "we cannot forget that the public has an interest in receiving information of public importance even if the trustworthiness of the information is not absolutely certain. The First Amendment is served not only by articles and columns that purport to be definitive, but by those articles that, more modestly, raise questions and prompt investigation or debate." Id. at 269.

In this case, Dr. Blackburn was interviewed as a leading expert in obesity and diet products and because of his prominent role as a witness in the proceedings pending in Massachusetts concerning

1   potential regulation of products containing ephedrine.  The statements of Dr. Blackburn as alleged in

2   the Complaint are clearly couched in terms of opinion.  The statement with regard to the possible

3   dangers of using ephedrine-based products is that one "can die" from taking these products.

4   (Complaint, ¶34).  The word "can" is a statement of possibility.  While Metabolife alleges that its

5   product is safe when taken as directed (Complaint, ¶33), that allegation has nothing to do with Dr.

6   Blackburn's statement.  Dr. Blackburn did _not_ state, as Metabolife would like to argue, that its

7   products kill in all circumstances.  The alleged statement is only that the product "can" kill.  Dr.

8   Blackburn is entitled to express his opinion (which apparently is shared by the FDA and others),

9   particularly in this context of the public debate and controversy concerning the safety of ephedrine-

10  based dietary supplements.

11          The other alleged statement by Dr. Blackburn is also protected as opinion.  The statement, as

12  alleged, is that Metabolife lacks "credibility."  In the context of Dr. Blackburn's opinion that

13  ephedrine-based products "can" kill, Dr. Blackburn is entitled to his opinion that Metabolife is not

14  credible, particularly when it claims that its product is harmless.  Credibility is inherently an issue of

15  judgment and opinion.   Given the legal problems of Metabolife's founder with regard to

16  methamphetamine prosecution, given the reports of the dangers of using products such as Metabolife

17  356 and given Metabolife's claims that the product is safe, Dr. Blackburn cannot be sued for merely

18  questioning Metabolife's credibility.  Whether Metabolife is credible under these circumstances, all

19  of which were disclosed in the broadcast, is obviously an issue of individual interpretation.

20          **5.      No Cause Of Action Can Be Stated Under Any Theory of
           Recovery Since The Statements At Issue Are Protected.**

21

22          Statements protected by the First Amendment cannot be the basis for any claim, whatever the

23  label given to the cause of action.  Thus, Metabolife's claims for negligent and intentional interference

24  with prospective economic advantage must also be dismissed since they are premised upon the same

25  statements that underlie the meritless claim for defamation.  (Complaint, ¶¶94 and 102).  See, e.g.,

26  Blatty v. New York Times Co., 42 Cal.3d 1033, 1042-43, 1048 (1986) (First Amendment not limited

27  to defamation actions but applies to all claims "whose gravamen is the alleged injurious falsehood of

28  a statement"); Reader's Digest Association, 37 Cal.3d at 265 ("liability cannot be imposed on any

21

1   theory for what has been determined to be a constitutional and protected publication.") Dixon v.

2   Superior Court, 30 Cal.App.4th 733, 742, 743 (1994) (First Amendment bars liability for intentional

3   interference with prospective advantage in addition to defamation claims).

4   **E.     Dr. Blackburn Is Entitled To An Award Of Attorney's Fees and Costs.**

5       Section 425.16 not only requires speedy resolution of this case, but also mandates the award

6   of attorney's fees and costs to Dr. Blackburn:

7       (c) In any action subject to subdivision (b), a prevailing defendant on a special
8       motion to strike <u>shall</u> be entitled to recovered his or her attorney's fees and costs
        (Emphasis added).

9       Whatever the basis for this court's dismissal of the case, whether on grounds of lack of

10   jurisdiction, venue, or the anti-SLAPP statute, attorney's fees and costs must be awarded. The expense

11   of litigation alone chills speech. The California Legislature's clear intent, as adopted and accepted by

12   the Ninth Circuit, is that speech shall not be intimidated by litigation. The fact that this lawsuit by

13   Metabolife may be improper for many reasons, not just because it is meritless, should not infringe

14   upon Dr. Blackburn's statutory and constitutional rights to be protected from the expense incurred in

15   defending against SLAPP litigation.

16       In addition to the fee provisions in Section 425.16, the Court is requested to consider its

17   discretion under Fed.R.Civ.P. 11. Dr. Blackburn was interviewed for a local news broadcast in Boston

18   with regard to a legislative process in which he was involved in Massachusetts. Metabolife's claims

19   against Dr. Blackburn's constitutionally protected speech are not only meritless, but they have

20   deliberately been filed in a forum having no conceivable basis for asserting personal jurisdiction over

21   this defendant. Metabolife was given advance notice that this motion was forthcoming and the

22   opportunity to voluntarily dismiss without subjecting Dr. Blackburn to the fees and expenses which

23   have been incurred. (O'Regan Dec., Ex. 7). Metabolife must now bear the expense of its groundless

24   attempt to chill constitutionally protected speech.

25   / / /

26   / / /

27

28

## IV.

## CONCLUSION

In this case, Metabolife attempts to single out Dr. Blackburn for liability although he is but one speaker in the context of a wide-spread public and political debate regarding the safety of food and health products. The importance of free speech on this issue is demonstrated in <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal.4th 965, 991 (1993). There, the California Medical Association conceded that thousands of drugs having no known harmful effects are regularly prescribed. "New data about potentially harmful effects may not develop for years." The prescription drug DES was noted as an example by the court. The drug was widely marketed and prescribed to prevent miscarriage from the late 1940s through the 1960s. Unfortunately, studies later established that the drug was a carcinogen. <u>Id.</u> at 992, n.13.

The chill of litigation to free speech by those, such as Metabolife, who seek to shut down any criticism or the raising of questions concerning the safety of products being broadly marketed to the public should concern us all. Public safety and political debate are at issue in this litigation. Not surprisingly, the California Legislature has specifically found a need for speedy resolution of cases of this nature and provided the mechanism for this Court to defeat Metabolife's attempt to chill and squelch free speech. This Court should dismiss this case and award Dr. Blackburn the costs and expenses he has incurred in defending himself against this meritless action. Only by doing so can this Court uphold the First Amendment purposes of encouraging free speech in matters of public and political controversy, purposes which are particularly important in the context of this case, which concerns public health and safety.

Respectfully submitted,

BURNS & LEVINSON
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
Gregory D. Roper, Attorneys
for Defendant George Blackburn